UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANGELICA WALKER, <br><br> *Plaintiff*, <br><br> v. <br><br> EMBASSY OF SWEDEN et al., <br><br> *Defendants*. | Civil Action No. 23-1892 (TJK) |

## MEMORANDUM

Angelica Walker, proceeding pro se, sued the Embassy of Sweden and Karin Olofsdotter, then the Swedish Ambassador to the United States. She alleges that, while she worked at the Embassy, Defendants discriminated and retaliated against her in violation of the D.C. Human Rights Act. The Embassy removed the case from D.C. Superior Court and moved to dismiss. A flurry of motions and related filings followed. In summary, the Court will dismiss the Embassy because Walker requests its dismissal. She concedes that she seeks to bring no claim against that entity and that she never properly served it. And the Court will grant the Embassy's motion to vacate the entry of default against Ambassador Olofsdotter, dismiss her with prejudice, and dismiss the case, because she possesses diplomatic immunity that shields her from suit.

**I.      Background**

In June 2023, Walker filed a complaint in D.C. Superior Court against the Embassy of Sweden and Olofsdotter, then the Swedish Ambassador to the United States. *See* ECF No. 3-1. According to the complaint, Walker worked at the Embassy from August 2021 until her termination in April 2022. *Id.* at 2–4. She alleges that Defendants discriminated and retaliated against her in various ways, in violation of the D.C. Human Rights Act. *See id.* at 2–6. Later that month,

the Embassy removed the case to this Court based on its status as "an organ of a foreign state." *See* ECF No. 1; 28 U.S.C. §§ 1441(d); 1603(b)(2). Soon after, the Embassy moved to dismiss. ECF No. 5. It argued that Walker had failed to properly effect service on the Embassy under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602–1611. *Id.* at 4–5. It also noted that:

> The Ambassador, while named as a Defendant, is immune from service and the jurisdiction of the Court under the 1961 Vienna Convention on Diplomatic Relations, art. 31 and 39(2), and any claim against her would be required to be dismissed pursuant to 22 U.S.C. § 254d. It is the Embassy's understanding that, due to her immunity, the Ambassador does not intend to appear in this action.

*Id.* at 1 n.1. Walker opposed the motion, explaining that she was "not aware of the certain ways to sufficiently file according to the [FSIA]." ECF No. 10 at 8–9. The Embassy replied, ECF No. 11, and Walker then filed an amended opposition, ECF No. 12.

In September 2023, Walker moved to drop the Embassy from this lawsuit, conceding that she "ha[d] failed to properly serve the Embassy in accordance with the FSIA." ECF No. 17 at 3. She also explained that she "named the wrong party as [her] employer," and so the "Embassy should officially be dropped as a party." *Id.* at 4. But she insisted that the case should proceed against Ambassador Olofsdotter. *Id.* at 10–11.

Also in September 2023, Walker filed an Affidavit for Default as to Ambassador Olofsdotter. ECF No. 13. The Clerk entered default against her, given her apparent "fail[ure] to plead or otherwise defend this action though duly served with summons and copy of the complaint." ECF No. 15. Following the entry of default, Walker moved for default judgment, seeking $2,000,000 in lost earnings and $5,000,000 for pain and suffering. ECF No. 16. The Embassy

2

moved to vacate the entry of default, arguing that Ambassador Olofsdotter possesses diplomatic immunity.[1]  ECF No. 21 at 3–5.

In November 2023, the United States filed a statement of interest, ECF No. 26, and later submitted a certification of immunity as to Ambassador Olofsdotter from the Department of State, ECF No. 27.

## II.   Analysis

### A.   The Embassy of Sweden

The Embassy moves to dismiss for improper service.  It argues that, given its status as a "foreign state," Walker had to follow the four hierarchical methods of service outlined in the FSIA. *See* 28 U.S.C. § 1608(a); *Barot v. Embassy of the Republic of Zambia*, 785 F.3d 26, 27 (D.C. Cir. 2015) (describing the four methods in descending order of preference).  Importantly, "[w]hen serving a foreign sovereign, 'strict adherence to the terms of 1608(a) is required.'" *Barot*, 785 F.3d at 27 (quoting *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 154 (D.C. Cir. 1994)). The Embassy explains that, despite this strict requirement, Walker failed to effect service appropriately.  ECF No. 5-1 at 4–5.  And because "[f]ailure of service is a jurisdictional defect which is

---

[1] After the briefing on this motion was complete, Walker moved to file a surreply, which the Court will deny.  Surreplies are generally disfavored. *Kifafi v. Hilton Hotels Ret. Plan*, 736 F. Supp. 2d 64, 69 (D.D.C. 2010).  But district courts have discretion to grant or deny their filing. *Banner Health v. Sebelius*, 905 F. Supp. 2d 174, 187 (D.D.C. 2012).  They should consider "whether the movant's reply in fact raises arguments or issues for the first time; whether the non-movant's proposed surreply would be helpful to the resolution of the pending motion; and whether the movant would be unduly prejudiced were leave to be granted." *Glass v. Lahood*, 786 F. Supp. 2d 189, 231 (D.D.C. 2011), *aff'd*, No. 11-5144, 2011 WL 6759550 (D.C. Cir. Dec. 8, 2011).  But "when arguments raised for the first time in reply fall within the scope of the matters the opposing party raised in opposition, and the reply does not expand the scope of the issues presented, leave to file a surreply will rarely be appropriate." *Anand v. HHS*, No. 21-CV-1635 (CKK), 2022 WL 18911137, at *1 (D.D.C. Nov. 15, 2022) (cleaned up).  The Embassy's reply did not raise issues or arguments for the first time, nor would the proposed reply help the Court in deciding the motion.

fatal," *McAllister v. Potter*, 843 F. Supp. 2d 117, 119 (D.D.C. 2012), the Embassy maintains that it must be dismissed from the case.

In response, Walker agrees that the Embassy was never properly served. She acknowledges that "[t]he Embassy is a foreign state under the [FSIA]" and that she "failed to properly serve the Embassy in accordance with the FSIA." ECF No. 17 at 3. But she goes further by affirmatively requesting that the Embassy be dismissed as a defendant. She says she "named the Embassy as a defendant wrongfully by mistake." *Id.* at 6. Because she "named the wrong party as [her] employer," she asserts the "Embassy should officially be dropped as a party." *Id.* at 4. An "action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). And requests for voluntary dismissals under Rule 41(a)(2) are generally granted "unless the defendant would suffer prejudice." *Conafay v. Wyeth Laby's*, 793 F.2d 350, 353 (D.C. Cir. 1986). There is no reason to think the Embassy would suffer prejudice here, given that it seeks dismissal for improper service. For these reasons, the Court will oblige Walker, grant her motion, and dismiss the Embassy.

**B.     Ambassador Olofsdotter**

The Embassy and the United States maintain that Ambassador Olofsdotter possesses diplomatic immunity for her actions at issue, and so she must also be dismissed. Although Walker disagrees, they are correct.

The United States signed the Vienna Convention on Diplomatic Relations ("VCDR"). The VCDR "applies to diplomatic agents such as ambassadors and diplomatic mission personnel." *United States v. Khobragade*, 15 F. Supp. 3d 383, 385 (S.D.N.Y. 2014). Article 31 of the VCDR provides such diplomats with "absolute immunity from criminal prosecution and, with three limited exceptions, immunity from civil suit as well." *Tabion v. Mufti*, 877 F. Supp. 285, 287 (E.D.

Va. 1995). Thus, by statute, courts are instructed to dismiss "[a]ny action or proceeding brought against an individual who is entitled to immunity." 22 U.S.C. § 254d; *see also Sabbithi v. Al Saleh*, 605 F. Supp. 2d 122, 126 (D.D.C. 2009). "Such immunity may be established upon motion or suggestion by or on behalf of the individual, or as otherwise permitted by law or applicable rules of procedure."[2] 22 U.S.C. § 254d.

The Embassy argues that Ambassador Olofsdotter possesses diplomatic immunity. *See* ECF No. 21 at 3–5. And the United States agrees. The State Department has certified her diplomatic status for purposes of this case. *See* ECF No. 27-1. And courts "generally accept[] as conclusive the views of the State Department as to the fact of diplomatic status." *Abdulaziz v. Metro. Dade Cnty.*, 741 F.2d 1328, 1331 (11th Cir. 1984). Indeed, "it appears that no reviewing court has ever held that the State Department's certification is anything but conclusive." *United States v. Al-Hamdi*, 356 F.3d 564, 572 (4th Cir. 2004).[3]

For her part, Walker argues that she is suing Ambassador Olofsdotter "[o]utside of her [i]mmunity [r]ole." *See* ECF No. 24 at 25–30. She maintains that one of the three exceptions to a diplomat's immunity from civil suit applies: the commercial-activity exception. *See* ECF No. 12 at 5–6, 8, 23–24; ECF No. 24 at 9–10, 16–17. Under that exception, diplomats lack immunity for "action[s] relating to any professional or commercial activity exercised by the diplomatic agent in the receiving State outside his official functions." VCDR art. 31(1)(c).

---

[2] For this reason, the Embassy's arguments on behalf of the Ambassador are proper. *Contra* ECF No. 24 at 17–23 (objecting to the Embassy's filings that argue for the Ambassador's immunity).

[3] That Ambassador Olofsdotter left her post in August 2023 is of no moment. Under the VCDR, a former diplomat retains "residual" immunity for acts committed "in the exercise of his functions as a member of the mission." VCDR art. 39(2); *accord Swarna v. Al-Awadi*, 622 F.3d 123, 135 (2d Cir. 2010). This, too, accords with the State Department's interpretation of the VCDR. *See* ECF No. 27-1.

The commercial-activity exception does not apply to Walker's allegations against Ambassador Olofsdotter. That exception is exceedingly narrow. *See Tabion v. Mufti*, 73 F.3d 535, 538 n.6 (4th Cir. 1996). Indeed, the term "commercial activity" only encompasses trade or business activity engaged in for personal profit. *See Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 445 (2d Cir. 2019). And diplomats are prohibited from engaging in such activity by the VCDR. *See* VCDR art. 42 ("A diplomatic agent shall not in the receiving State practice for personal profit any professional or commercial activity."). For this reason, the United States has characterized the exception as "minor" and "probably meaningless." *Tabion*, 73 F.3d at 538 n.6 (citation omitted). In any event, Walker does not allege that Ambassador Olofsdotter engaged in any business activity for personal profit. To the contrary, her allegations pertain to her employment at the Embassy and actions purportedly undertaken by Ambassador Olofsdotter in her official role. *See* ECF No. 3-1 at 4 (describing a single interaction between Walker and Ambassador Olofsdotter in which the Ambassador agreed to handle certain concerns raised by Walker). These are exactly the sort of activities covered by her diplomatic immunity. *Cf. Brzak v. United Nations*, 597 F.3d 107, 113 (2d Cir. 2010) (recognizing immunity of diplomat accused of sex discrimination and retaliation).

On top of all that, the deference the Court must give to the views of the United States as to Ambassador Olofsdotter's diplomatic status also extends to its interpretation of whether an exception to immunity applies. *See Tabion*, 73 F.3d at 538 ("Substantial deference is due to the State Department's conclusion [regarding the commercial-activity exception]."); *Sabbithi*, 605 F. Supp. 2d at 127–28 (relying on United States' Statement of Interest to interpret the commercial-activity exception). "Although not conclusive, the meaning attributed to treaty provisions by the Government agencies charged with their negotiation and enforcement is entitled to great weight." *United States v. Stuart*, 489 U.S. 353, 369 (1989) (quoting *Sumitomo Shoji Am., Inc. v. Avagliano*, 457

U.S. 176, 184–85 (1982)).  In this case, the State Department has characterized Ambassador Olofsdotter's immunity as "comprehensive."  ECF No. 27-1.  And the United States has concluded that none of the exceptions to immunity apply.  ECF No. 26 at 4–5 n.3.

For these reasons, the Court determines that Ambassador Olofsdotter is entitled to diplomatic immunity, and so she must be dismissed.  *See* 22 U.S.C. § 254d.

### III. Conclusion

For all these reasons, the Court will grant the Embassy's motion to vacate the entry of default against Ambassador Olofsdotter, deny Walker's motion for default judgment against her, and dismiss her with prejudice.  Ambassador Olofsdotter's dismissal will be with prejudice because, given her diplomatic immunity, "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency" in this case.  *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (quoting *Jarrell v. USPS*, 753 F.2d 1088, 1091 (D.C. Cir. 1985)).  The Court will also grant Walker's motion and dismiss the Embassy, and the case, given that no defendants remain.  *See Ramirez v. U.S. Park Police*, No. 22-CV-187 (CRC), 2023 WL 1438395, at *7 (D.D.C. Feb. 1, 2023) (dismissing case where "[a]ll claims against all defendants [were] dismissed").

A separate order will issue.

/s/ Timothy J. Kelly  
TIMOTHY J. KELLY  
United States District Judge

Date: March 9, 2024